UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:09-cr-385-T-23TBM
         8:10-cv-2378-T-23TBM

LUIS ARAGON RENTERIA
_____/

**O R D E R**

Renteria's amended motion to vacate under 28 U.S.C. § 2255 (Doc. 1) challenges the validity of his conviction for conspiring to possess with the intent to distribute cocaine while aboard a vessel, for which he serves 135 months imprisonment. Renteria pleaded guilty with the benefit of a plea agreement. The United States admits that the motion to vacate is timely. Response at 5 (Doc. 9)

The amended motion to vacate asserts three grounds. The first ground asserts that trial counsel rendered ineffective assistance. The second ground alleges that the United States concealed favorable evidence and in the third ground that the district judge "engaged in impermissible intervention in the plea process." The amended motion to vacate is primarily a compilation of conclusory allegations. Although the motion alleges one claim that challenges the district court's jurisdiction – an issue which was debatable when the motion to vacate was prepared – the claim lacks merit under *United States v. Bellaizac-Hurtado*, 700 F.3d 1245 (11th Cir. 2012).

# FACTS

In his plea agreement Renteria agreed to the following facts (Doc. 47 at 10 in 09-cr-385):

> In 2009, the defendant, his co-defendants, and others were knowing and willing participants in a on-going international maritime drug smuggling venture involving more than five (5) kilograms of cocaine and two stateless self-propelled semi-submersible (SPSS) vessels.
>
> On August 11, 2009, United States aircraft located and monitored an SPSS vessel in international waters, approximately 350 nautical miles southwest of Puntarenas, Costa Rica. The SPSS was approximately sixty feet in length. It was blue in color with an extremely low profile and no lights. Approximately twelve inches of the vessel were above the waterline and thus visible. The SPSS was approximately eight feet in height at its center, and sloped on both ends. Nearly three-quarters of the vessel were submerged. It flew no flag, displayed no home/hailing port, and did not have any registration numbers.
>
> The SPSS vessel was operated by the four defendants. While being monitored by U.S. aircraft, the defendants donned life jackets, scuttled the vessel, and embarked in life rafts. The defendants were rescued by a United States Coast Guard (USCG) Law Enforcement Detachment (LEDET) and taken to USS FORD.
>
> The LEDET asked the defendants whether any of them were the master or person in charge of the SPSS vessel. Defendant Edilberto Garcia I Barbo admitted to being the master of the SPSS vessel and claimed it departed from Colombia. The USCG approached the Government of Colombia to inquire whether the SPSS vessel was Colombian-flagged. The Government of Colombia responded that it could neither confirm nor deny any claim of Colombian nationality for the SPSS vessel. Accordingly, based on these facts and circumstances, the USCG assimilated the SPSS vessel to statelessness.

> According to a person known as COOPERATING WITNESS 1 (CW1), a compartment in the forward half of the SPSS vessel was loaded with bales of cocaine. Based on CW1's description of the dimensions of the bales, the government estimates that each bale contained twenty-five kilograms of cocaine. According to CW1, all of the defendants were told that the purpose of the voyage was to smuggle cocaine, prior to their departure from Colombia. The bales of cocaine were readily visible to all four defendants in the SPSS vessel. Based on the dimensions of the cocaine-holding compartment, the government estimates that the SPSS vessel was carrying approximately five tons of cocaine.
>
> This was the second such SPSS vessel operation undertaken by the defendants in 2009, according to CW1. On or about April 2009, all four defendants embarked in a similar, stateless SPSS vessel, loaded with approximately eighty bales of cocaine. They departed Colombia, transited in international waters, and went to a point off the coast of Guatemala. There they offloaded the cocaine to small boats, scuttled the SPSS vessel, and accompanied the cocaine to Guatemala. They later flew from Guatemala to Cali, Colombia.

## **GROUND ONE**
## **INEFFECTIVE ASSISTANCE OF COUNSEL**

Renteria claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the

> defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Renteria must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691-92. To meet this burden, Renteria must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

The claim of ineffective assistance of counsel in ground one asserts factually unsupported allegations of trial counsel's "collusion" and "fraudulent concealment of evidence," which caused a "fundamental miscarriage of justice.[1] Renteria faults counsel for not "challenging the constitutional make-up of the grand jury," for not challenging the court's jurisdiction based on the "heresay [*sic*] claim [that] the vessel 'was subject to the jurisdiction of the United States' absent evidence of proof," and for not protecting Renteria's rights both to a preliminary hearing and to consult the Columbian Consulate General.

---

[1] Renteria's unsupported allegations are not limited to the claim of ineffective assistance of counsel. In the amended motion to vacate, including the portion of the attached memorandum entitled "Discussion," Renteria asserts that some form of "collusion" occurred. The word "collusion" appears on nearly half of the pages in the memorandum. This order attempts to discern the principal claims. The entire motion to vacate and the supporting memorandum contain mostly unsupported allegations that warrant no discussion. Any claim not specifically addressed is denied. *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992), *cert. denied*, 513 U.S. 1162 (1995).

Renteria discloses that he prepared neither the amended motion to vacate nor the attached memorandum but that each was prepared by his "legal consulting investigator," whom Renteria also calls his "legal consultant." This same individual obviously prepared a nearly identical, conclusory, factually unsupported motion to vacate for a defendant in an unrelated case, *United States v. Martinez*, 8:10-cv-2350-T-23MAP, which motion includes the same mis-spelled words.

The only allegation that warrants discussing is whether the district court lacked jurisdiction. The Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §70503(a), *et. seq.*, established jurisdiction under the constitutional authority granted to Congress "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." U.S. Const., Art. I, § 8, cl. 10. The MDLEA defines a vessel subject to the jurisdiction of the United States as "a vessel without nationality," which is commonly called a stateless vessel. 46 U.S.C. App. § 1903(c)(1)(A). Renteria admitted in the plea agreement that his vessel was without nationality when he admitted that he was arrested while aboard a vessel that "flew no flag, displayed no home/hailing port, and did not have any registration numbers." (Doc. 47 at 11 in 09-cr-385) Additionally, Renteria admitted in the plea agreement that the Government of Columbia could neither confirm nor deny the assertion by the vessel's master that the vessel was of Columbian nationality. At the plea hearing, Renteria agreed with the government's factual representation that he was traveling in a vessel without nationality (Doc. 91 at 27-30 in 09-cr-385). Consequently, Renteria fails to show that he was not subject to the jurisdiction of the United States when he was arrested in a stateless vessel.

Even if the vessel was not stateless, the Government of Columbia consented to the United States enforcing the laws of the United States and the vessel was in international water. *United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1248-49 (11th Cir. 2012), explains the breadth of jurisdiction under the MDLEA.

- 6 -

> The Supreme Court has interpreted that Clause to contain three distinct grants of power: the power to define and punish piracies, the power to define and punish felonies committed on the high seas, and the power to define and punish offenses against the law of nations. *See United States v. Smith*, 18 U.S. (5 Wheat.) 153, 158–59, 5 L. Ed. 57 (1820). The first two grants of power are not implicated here: piracy is, by definition, robbery on the high seas, *United States v. Furlong*, 18 U.S. (5 Wheat.) 184, 198, 5 L. Ed. 64 (1820), and the Felonies Clause is textually limited to conduct on the high seas, *see* U.S. Const., Art. I, § 8, cl. 10. The United States relies instead on the congressional power to proscribe the defendants' drug trafficking in the territorial waters of Panama. The question whether Congress has the power under the Offences Clause to proscribe drug trafficking in the territorial waters of another nation is an issue of first impression in our Court.

*Hurtado* rejects the argument that the "Offences Clause" authorizes the MDLEA for drug activity that occurs within a foreign country's territorial water. "Because drug trafficking is not a violation of customary international law, we hold that Congress exceeded its power, under the Offences Clause, when it proscribed the defendants' conduct in the territorial waters of Panama." 700 F.3d at 1258. *Hurtado* is inapplicable to Renteria. When he pleaded guilty, Renteria agreed with the accuracy of the prosecutor's Rule 11 factual predicate, which included the vessel's location – "350 nautical miles southwest of Puntarenas, Costa Rica." This places the vessel far from land in the Pacific Ocean, which is unquestionably both in international water and not in a country's territorial water. "International water" is all area beyond twelve miles from land. *United States v. McPhee*, 336 F.3d 1269, 1273 (11th Cir. 2003). At sentencing Renteria accepted the same fact statement when he accepted the statement of facts in paragraphs eleven through nineteen of the

- 7 -

pre-sentence report.  (Doc. 93 at 4 in 09-cr-385)   As a consequence, Renteria's jurisdictional argument lacks merit.

## **GROUNDS TWO AND THREE**

In ground two Renteria alleges that the Assistant United States Attorney "failed in his duty to disclose *Brady* material, to wit, a copy of the registry of the 'Submersible Vessel or Semi-Submersible Vessel Without Nationality' . . . ."[2]  The master of Renteria's vessel claimed Columbian registry for the vessel.  Because the Government of Columbia could neither confirm nor deny Columbian nationality for the vessel and because the vessel displayed no indicia of nationality, the vessel is classified as "stateless."  As a consequence, the United States has jurisdiction over the vessel to enforce the laws of the United States.

Renteria complains that the Consulate General of Columbia was not informed about his arrest in violation of the Vienna Convention on Consular Relations.  First, the Vienna Convention creates no individual right.  "[T]he Vienna Convention itself disclaims any intent to create individual rights, stating that its purpose 'is not to benefit individuals but to ensure the efficient performance of functions by consular posts.'"  *United States v. Duarte-Acero*, 296 F.3d 1277, 1280-81 (11th Cir.) (quoting the preamble to the Vienna Convention), *cert. denied*, 537 U.S. 1038 (2002).  Second,

---

[2] This is an example of Renteria's "legal consultant"– as described in the earlier footnote – copying what he wrote in the other case. The other case involved a vessel with a registry.  Renteria's stateless, undocumented vessel had no registry.

Renteria waived this claim when he pleaded guilty. A guilty plea waives a non-jurisdictional defect, as *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), explains:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

This waiver of rights precludes most challenges to the conviction, including a claim of ineffective assistance of counsel.[3] *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992), *cert. denied*, 555 U.S. 857 (2008). Additionally, because his guilty plea was without a plea agreement and without waiving his appellate rights, Renteria procedurally defaulted this claim by not asserting it on direct appeal. *See Breard v. Greene*, 523 U.S. 371, 375 (1998) ("[W]hile we should give respectful consideration to the interpretation of an international treaty rendered by an international court with jurisdiction to interpret such, it has been recognized in international law that, absent a clear and express statement to the contrary, the procedural rules of the forum State govern the implementation of the treaty in that State."); *Maharaja v. Sec'y, Dep't of Corr.*, 432 F.3d 1292, 1321 (11th Cir. 2005) (following *Breard* in applying a procedural bar to a claim under the Vienna Convention). Lastly, Renteria shows no prejudice based on his not consulting with the Consulate General of Columbia. *See Breard*, 523

---

[3] This waiver includes the conclusory allegation of counsel's ineffectiveness for neither securing a preliminary hearing nor preserving Renteria's "rights to inspect the records of the grand jurors . . . ."

U.S. at 377 ("Even were Breard's Vienna Convention claim properly raised and proved, it is extremely doubtful that the violation should result in the overturning of a final judgment of conviction without some showing that the violation had an effect on the trial.").

In ground four Renteria alleges that the district court "engaged in impermissible intervention in the plea process . . . when he denied movant his right to 'confrontation' in arraignment proceedings . . . ." Renteria pleaded guilty before the magistrate judge and not the district judge, who was not involved in Renteria's plea colloquy at re-arraignment.

Accordingly, the amended motion to vacate under 28 U.S.C. § 2255 (Doc. 4) is **DENIED**. The clerk must close this case.

## DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Renteria is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Renteria must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d

926, 935 (11th Cir 2001).  Renteria is not entitled to appeal *in forma pauperis* because he is not entitled to a COA.

Accordingly, a certificate of appealability is **DENIED**.  Leave to proceed *in forma pauperis* on appeal is **DENIED**.  Renteria must obtain permission from the circuit court to proceed *in forma pauperis*.

ORDERED in Tampa, Florida, on March 28, 2014.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE